PILGRIM TURKEY PACKERS, INC. *v.*
DEPARTMENT OF REVENUE

Daniel A. Post, Long & Bodtker, Albany, represented plaintiff.

Alfred B. Thomas, Assistant Attorney General, Salem, represented defendant.

Decision for defendant rendered July 29, 1971.

CARLISLE B. ROBERTS, Judge.

The plaintiff corporation appeals from the Department of Revenue's Order No. VL 70-441, affirming the Marion County Assessor's denial in 1970 of the "processor's exemption" provided by ORS 308.250. The plaintiff had failed to file necessary information with the county assessor prior to the deadline for such filing established by the statute; i.e., "on or before May 15 of the year of assessment." The plaintiff pleads estoppel and that the statute is merely directory, not mandatory.

The parties have stipulated to the following:

"(a) That plaintiff is an Oregon corporation engaged in the business of killing and processing poultry products.

"(b) That on the 27th day of February 1970, plaintiff filed a personal property tax return with the county assessor of Marion County, Oregon, showing processed turkeys on hand as of January 1, 1970, as having a value of $440,269.

"(c) That after January 1, 1970, and prior to May 1, 1970, plaintiff sold and shipped processed turkeys on hand having a value of $426,585.93, leaving processed turkeys on hand as of May 1, 1970, of a value of $13,685.98.

"(d) That on or before May 15, 1970, plaintiff caused to be prepared State Tax Commission form PT-6-90 [sic] (Revised 12-68) showing the sales and the shipments as herein before set forth.

"(e) That the secretary for the plaintiff's manager, under instructions to properly file the form and only having read the face of the form and not knowing where to cause this form to be filed, thereupon called some employe (name not known) of the Oregon State Department of Revenue for instructions for filing and was informed that if it was a State Tax Commission form, it should be filed with the Oregon State Department of Revenue. That on the 15th day of May 1970, the plaintiff acting by and through the secretary to plaintiff's manager duly enclosed the said State Tax Commission form in an envelope addressed to the Oregon State Department of Revenue in Salem, Oregon, with sufficient prepaid postage thereon, and did deposit the same in the United States mail on the 15th day of May 1970.

"(f) That the Department of Revenue did receive the document from the plaintiff on May 19, 1970, and did forward it to the Marion County Assessor who received it on May 21, 1970.

"(g) That the Marion County Tax Assessor thereafter denied the assessment cancellation on the grounds that the documentary proof was not timely filed."

Using another form prescribed by the Department of Revenue, obtained from the county assessor, the plaintiff had filed a personal property tax return with the Marion County Assessor's office on February 27, 1970, showing the inventory of processed turkeys on hand as of January 1, 1970, pursuant to ORS 308.250. Subsection (2) of that section provides that poultry held primarily for sale for human consumption can be exempt from taxation if the taxpayer supplies the assessor with "sufficient documentary proof that the personal property so assessed actually was transported or shipped to another point before May 1 of the year of assessment." Subsection (4) of the same statutory section reads:

"(4) No cancellation of assessment under subsection (2) of this section shall be made unless the required proof is furnished to the assessor on or before May 15 of the year of assessment."

The confusion as to where the exemption claim form, entitled "Affidavit of Producer or Processor," was to be filed developed on May 15, 1970, in the office of the plaintiff. A new general manager specifically charged his office manager to file a proper affidavit. As stated above, the original personal property report had been filed with the Marion County Assessor on February 27, 1970, but the testimony of the office manager, a secretarial worker and a receptionist indicated that they were not sure of the proper place to file the affidavit for exemption from assessment of the property listed earlier. Although the office manager testified that the general manager

had instructed him "to review the form," he asked the office receptionist to call the Department of Revenue to find out where the exemption claim was to be filed. The reason given for calling the Department of Revenue was the fact that the form had the following designation on its face, at the bottom left-hand corner:

"State Tax Commission Form
"PT-C-90 (Rev. 12-68)"

The receptionist testified that she gave the form number to some unknown individual in the Department of Revenue, and that

"* * * when I gave the form number and that it said 'State Tax Commission' on it, she said, 'Well, of course, it comes to us'; you know, just like 'Is there any question?' And so that's where we mailed it.

"Q Was there any other conversation other than that?
"A Well, she kind of acted—she made some kind of a comment that I was kind of stupid because I didn't know that it would just go there and I don't—she didn't even take time to look, so I don't—

"Q But the instruction you received was to mail it to the State Tax Commission?
"A Um-hum."

This is the basis for plaintiff's plea of estoppel.

In the case of *Johnson v. Commission*, 2 OTR 504 (1967), at 506, the court said:

"Quasi estoppel is a doctrine extended by the courts to prevent a wrong being done ' "wherever, in good conscience and honest dealing" a party ought not to be permitted to repudiate his previous statements, declarations or actions.' *Robbins v. United States*, 21 F Supp 403 (Ct Cl 1937), 20 AFTR 491, 37-2 USTC ¶ 9578. In *R. H. Stearns Co.*

*v. U. S.,* 291 US 54, 54 S Ct 325, 78 L ed 647, 653 (1934), the court stated that the 'disability has its roots in a principle more nearly ultimate than either waiver or estoppel, the principle that no one shall be permitted to found any claim upon his own inequity or take advantage of his own wrong.'

"The doctrine of quasi estoppel against the government should be applied only in cases where the alternative is gross inequity. 19 Tax L Rev 489. The application of estoppel should be applied rarely because 'the policy in favor of an efficient collection of the public revenue outweighs the policy of the estoppel doctrine in its usual and customary context. * * *' "

On appeal of the decision to the Supreme Court, 248 Or 460 (1967), at 463, the court said:

"* * * The policy of efficient and effective tax collection makes the doctrine of rare application. It could only be applied when there is proof positive that the collector has misinformed the individual taxpayer and the taxpayer has a particularly valid reason for relying on the misinformation and that it would be inequitable to a high degree to compel the taxpayer to conform to the true requirement. * * *"

In the present case, the taxpayer's agents were simply negligent. They had the necessary official form in their hands while they were discussing their question and telephoning to the Department of Revenue. Centered at the bottom of the front page of the form, two spaces above the reference to "State Tax Commission Form," in capital letters, the following instruction was printed:

"SEE OVER FOR INSTRUCTIONS AS TO QUALIFICATIONS."

The last three lines on the obverse of the form, under

the heading "Instructions," read as follows (all in capital letters):

"2. NO CANCELLATION OF ASSESSMENT WILL BE MADE UNLESS THE RE-QUIRED PROOF IS FURNISHED TO THE ASSESSOR ON OR BEFORE MAY 15 OF THE YEAR OF ASSESSMENT."

The office manager testified that he "had read portions of the back earlier" for instructions as to proper descriptions of personalty. As to the last three lines of the form, quoted above, he testified: "I didn't relate this to mailing instructions other than a deadline for filing."

The case of *Johnson v. Commission, supra,* is easily distinguished. In that case, the responsible officer (the assessor) gave to the taxpayer an out-of-date form with an incorrect date on which the latter reasonably relied. In the present case, the proper officer, the assessor, was not consulted. If the taxpayer had examined the form with reasonable diligence, it is impossible to believe that the wrong step would have been taken. This case more nearly resembles *Bernard Chevrolet v. Commission,* 3 OTR 411 (1969), than it does the *Johnson* case.

ORS 305.100, for the tax year 1970-1971, and for many years prior thereto, provided:

"The Department of Revenue shall:
"* * * * *

"(2) Prescribe all forms of books and blanks used in the assessment and collection of taxes not otherwise prescribed by law and change the forms of blanks and books prescribed by law in case change is necessary."

This duty can be coupled with ORS 305.090, the statute which requires the "Department of Revenue to exercise general supervision of the system of taxation throughout the state, and general supervision and control over the administration of the assessment and tax laws and over county assessors."

■ The plaintiff appears, in its written argument, to have equated the Department of Revenue with the Marion County Assessor because of these statutes. It is regrettable that the state of our society and of our economy does not make it possible to impose on the most anonymous member of officialdom the duty and ability to serve the public in a better fashion than is presently practicable. The problem is nicely illustrated in *Fed. Crop Ins. Co. v. Merrill*, 332 US 380, 68 S Ct 1, 92 L ed 10, 175 ALR2d 1075 (1947), cited by plaintiff. See also, Newman, *Reliability of Official Advice*, 53 Col L Rev 374 (1953). However, it was unreasonable for plaintiff, through its officers and employees, in the circumstances described, to rely upon the advice given over the telephone by an unknown employee of the Department of Revenue as against the printed instructions set out on the reverse of the form. A person is presumed to be familiar with the contents of any document which bears his signature. *Broad v. Kelly's Olympian Co.*, 156 Or 216, 66 P2d 485 (1937).

■ The second contention of the plaintiff is that subsection (4) of ORS 308.250 is directory, rather than mandatory, permitting the assessor or Department of Revenue to exercise a discretion to accept a late filing of the affidavit under the facts of this case. The subsection reads:

"(4) No cancellation of assessment under sub-

section (2) of this section *shall* be made unless the required proof is furnished to the assessor on or before May 15 of the year of assessment." (Emphasis supplied.)

As is stated in the case of *Stanley, Adm. v. Mueller*, 211 Or 198, 315 P2d 125 (1957), at 208:

"It is elementary that 'shall' connotes the imperative; and, while there are numerous instances in which 'shall' in a statute is interpreted as 'may,' (see, e.g., *Childs v. Marion County*, 163 Or 411, 414-415, 97 P2d 955) just as 'may' is frequently interpreted as 'shall,' yet generally, as many decisions illustrate, 'The intention of the legislature as to the mandatory or directory nature of a particular statutory provision is determined primarily from the language thereof. Words or phrases which are generally regarded as making a provision mandatory, include "shall," and "must." ' 50 Am Jur 49, Statutes § 28. See, also, 2 Sutherland, Statutory Construction 216, § 2803. The following statements of the law upon this subject by the editors of American Jurisprudence are, we believe, generally accepted as correct:

"'* * * statutory provisions which relate to matters of substance, affect substantial rights, and are the very essence of the thing required to be done, are regarded as mandatory.' 50 Am Jur 48, Statutes § 25.

"'* * * The courts are, however, reluctant to contravene or construe away terms of a statute which in themselves are mandatory, except where the intent and purpose of the legislature are plain and unambiguous and clearly signify a contrary construction. Moreover, if any right to anyone depends on giving the word an imperative construction, the presumption is that the word was used in reference to such right or benefit.' Idem, 54 § 32."

It is very difficult to perceive a method under which the Legislative Assembly could have used more mandatory language without being grossly repetitious. There is no reason to think that the language used and the cut-off date were capriciously selected. It must be recognized that the legislature has allowed a very important exemption under ORS 308.250 and has set the last practicable date (May 15) which would still permit the assessor to complete his assessment roll. (May 15 is also the last date for filing with the assessor the claim for exemption by boat dealers under ORS 488.732; by motor vehicle dealers under ORS 481.270; for crab pot exemptions under ORS 508.270; under penalty provisions for deferral of residential taxes under ORS 311.680; and for cancellation of assessment of shipyard inventories under ORS 308.256.)

In the case of *Northwest Poultry and Dairy Products Co.* a corporation, plaintiff, versus *Wiley Smith, Multnomah County Assessor, et al,* defendants, Multnomah County Circuit Court No. 221-642, the court held that the language of subsection (4) was mandatory. In that case, a quantity of poultry having a value of $597,544 was actually transported or shipped, as required by subsection (2), but the affidavit was not mailed until May 20 because the corporate officer responsible for the mailing of the affidavit (who admitted that he knew the deadline was May 15) had suffered an operation in April, was convalescing on May 15 and did not return to his office until May 20. As in the present case, a substantial amount of tax was involved, but the decision was never appealed.

The fact that the forms were filed only a few days late is beside the point. The Department of Revenue and this court have no power to change the mandatory language of the Legislative Assembly.

The Department of Revenue's Order No. VL 70-441, dated October 23, 1970, must be affirmed.