C. V. and LAURA CLENDENIN
*v.*
DEPARTMENT OF REVENUE
and VIRGIL TRICK

■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■
■■■■■■■■■■■■■■■
■■■■■■■■■■■■

William M. Horner, McArthur & Horner, P.C., Monmouth, represented plaintiffs.

Glen V. Sorensen, Assistant Attorney General, Salem, represented defendant.

Decision for defendant rendered March 7, 1977.

■■■■■■■■■

CARLISLE B. ROBERTS, Judge.

Plaintiffs appealed to this court from defendant's Order No. VL 76-292, dated April 27, 1976, seeking relief from the Polk County Assessor's act of removing from farm use assessment the plaintiffs' 60.67 acres of land located in Polk County (identified in the county assessor's records as Tax Lot 1108 5 13-10 00200 11 085 and Tax Lot 1108 5 13-15 00200 11 085) for the tax year 1975-1976. Plaintiffs had appealed to defendant pursuant to ORS 306.520, seeking reconsideration of the assessor's denial of farm use assessment for the subject property, and relief from the assessment of additional tax which is imposed by ORS 308.395 upon land which becomes disqualified for special farm use assessment. The defendant department determined that it did not have jurisdiction to consider the assessor's denial of farm use classification, and found that the amount of recapture tax assessed was correct.

Plaintiffs purchased the subject property in 1970. It had been part of a large farm which was subsequently divided into smaller portions and sold. Farm use of the subject property had qualified it for special farm use assessment prior to the time plaintiffs had made their purchase. Plaintiffs continued the farm use through a sharecrop arrangement with a neighbor who harvested grain from the usable portion of the land. The remainder of the property, approximately 30 acres of

brushland which had been used for grazing by plaintiffs' predecessor, was not put to any use by plaintiffs.

Although plaintiffs did not make a new application for farm use assessment of the subject property after their purchase, the Polk County Assessor's office inadvertently continued to treat it as eligible for special assessment for a period of about five years. During the winter of 1974 to 1975, plaintiffs planted Christmas trees on approximately 17 acres. In February 1975, plaintiffs received a form letter from the Polk County Assessor's office, dated February 13, 1975, which stated, in part:

"This is your notice of the action taken by this office regarding your application for:

"* * * * *

"SPECIAL ASSESSMENT OF UNZONED FARM LAND, PURSUANT TO ORS 308.320

"XX Relates to denial of ALL land applied for See below

"* * * * *

"A taxpayer whose application (land as Forest Land or Special Assessment of Unzoned farm land has been denied in whole or in part) may appeal as provided in ORS 306.520 to the State Tax Commission within six months after he knows of the above acts. A petition must be filed with the State Tax Commission and two copies thereof with the County Clerk. Petitions are available from the County Clerk or the Office of the Assessor, Courthouse, Dallas, Oregon 97338.

"If more information is desired, please feel free to contact this office.

"* * * * *

"No application for last year, change of use from farm to forest, part in industrial use, and part in home."

After consultation with unidentified representatives of the assessor's office, plaintiffs applied for forest land designation for the subject property under ORS 321.618, in order to retain tax deferral benefits. Although the evidence is conflicting on this point, the plaintiff husband's testimony indicated that plaintiffs

were advised that application for forest land designation would allow the subject property to enjoy tax treatment similar to that under farm use assessment. Plaintiffs' application for designation of the property as forest land was made on February 24, 1975, and, there being no notification of denial from the assessor within three months, was deemed granted. (ORS 321.618(4).)

In late April of 1975, plaintiffs received notices of change in the assessed valuation of the subject property for the 1975-1976 tax year. These notices contained no information concerning the recapture of taxes against the subject property resulting from its disqualification for farm use assessment. It was not until plaintiffs received their tax statements in November 1975 that they became aware of this additional tax liability. Plaintiffs then appealed the disqualification and the assessment of additional tax to the Department of Revenue.

In order more fully to appreciate the problems raised on this appeal, it may be helpful to review the statutory development of special assessments for farm use and forest use and their interrelationship. Oregon Laws 1963, chapter 577, established a special assessment classification for land used exclusively for farm purposes in order to make a profit. Application for special farm use assessment was to be made to the assessor. In 1961, the Legislative Assembly provided for assessment of designated forest land at its production value. (Or Laws 1961, ch 659.) For this designation, also, application was to be made to the county assessor. Continuation of farm use and forest land designations are dependent on the continued use of the land for the stated purposes. There are provisions with respect to each which impose substantial tax recapture penalties for a change in use. (ORS 308.395, 308.399, 321.621, and 321.760.)

In 1975, the legislature enacted ORS 321.960 (Or Laws 1975, ch 617), which provided that land subject

to special assessment which was changed from farm use to a qualified forest use, or land changed from forest use to a qualified farm use, would escape the total amount of recapture tax that would have been incurred if the land had gone from farm or forest use assessment to a nonspecial assessment. This statute became effective September 13, 1975.

The questions presented to the court have been stated by plaintiffs as follows:

"1. Whether the Plaintiffs' appeal to the Department of Revenue as to the denial of the farm use tax deferment was timely;

"2. Whether or not the assessor is estopped from recapturing taxes based on the difference between the farm use deferral value and the market value of the land;

"3. Whether the Assessor was correct in denying Plaintiffs' farm a farm use deferral when Christmas trees were planted on the land;

"4. Whether ORS 321.960 applies to changes from farm use to forest use occurring prior to September 13, 1975 with a notice of recapture sent after September 13, 1975."

Plaintiffs' first contention is that their appeal of the Polk County Assessor's denial of farm use assessment for the subject property was timely under the provisions of ORS 306.520. The appeal was filed on November 24, 1975. ORS 306.520 provides in part:

"(1) Any taxpayer aggrieved by an act or omission of a county assessor * * * may, within six months after the act or omission becomes actually known to the taxpayer * * * appeal to the Department of Revenue * * *."

Plaintiffs argue that, until they received the November 1975 tax statement, they were not aware that recapture taxes would be assessed as a result of the disqualification of the subject property from farm use; and, therefore, their appeal was timely filed because at no time prior to their receipt of the November tax statement did they have knowledge that they were aggrieved by an act of the assessor.

[ 66 ]

They rely on that portion of ORS 306.520 which states that the appeal must be made within six months after the assessor's act "becomes actually known to the taxpayer."

■■ Plaintiffs' Exhibit 1 undermines this argument. This letter from the county assessor, dated February 13, 1975, notified plaintiffs of the removal of the subject property from farm use assessment. In addition, it explained the procedure for appeal of the change, using these words:

> "A taxpayer * * * may appeal * * * within six months after he knows of the *above acts.* * * *" (Emphasis supplied.)

The act of denial and notice to the taxpayers of that act marked the beginning of the period of limitations for appeals under ORS 306.520. Plaintiffs have cited *Harris v. Commission,* 3 OTR 133 (1967), in support of their argument that knowledge of the assessor's act is equivalent to knowledge of the consequences of that act. In the *Harris* case, the assessor's office had lost or misplaced a taxpayer's affidavit for cancellation of assessment under the processor's statute. The plaintiff in that case was aware of the circumstances at the time he paid his taxes, but was assured several times by the assessor's office that the mistake would be corrected. At a much later time, he was informed by the assessor's office that he would have to appeal to the Tax Commission for cancellation of personal property taxes. This court held that the taxpayer did not have actual knowledge of the assessor's act denying cancellation of tax until he received the letter informing him that he would have to appeal to the State Tax Commission. These facts are distinguishable from those in the present case, because here plaintiffs were informed at the time they received notice of the denial of farm use assessment in February 1975 that they would have to appeal that disqualification to the Department of Revenue. There was no statement made to cause plaintiffs to believe the assessor could or would change his determination. The six months'

statute of limitations began to run at that time. Plaintiffs' failure to understand or make inquiry concerning the tax consequences of the assessor's act cannot be used to extend the statute of limitations.

Plaintiffs' second contention is grounded in estoppel and seeks to prevent the assessment of the penalty tax provided by ORS 308.395 against the subject property. The basis for this argument is that the assessor's act constituted misleading conduct which was relied upon by the plaintiffs to their detriment. Plaintiffs cite three cases in support of their position: *Johnson v. Tax Commission,* 248 Or 460, 435 P2d 302 (1967), *aff'g* 2 OTR 504 (1967); *Pilgrim Turkey Packers v. Dept. of Rev.,* 261 Or 305, 493 P2d 1372 (1972), *rev'g* 4 OTR 498 (1971); and *Cascade Manor, Inc. et al v. Dept. of Rev.,* 5 OTR 482 (1974). In each of these three cases, the courts found that a taxpayer had justifiably relied on actions of the assessor which resulted in the loss of an exemption to which the taxpayer would have otherwise been entitled if an application had been timely filed. In the *Johnson* case, the county assessor had annually mailed application forms for cancellation of personal property tax on licensed motor vehicles to car dealers within the county. The deadline for filing had been changed by legislative action, and new forms were prepared. However, the assessor's office mailed an old form along with two new forms to the taxpayer. Both the Tax Court and Supreme Court held that the taxpayer's reliance on the date printed on the old form and on former practice was sufficient to estop the assessor from denying cancellation of tax solely because of late filing.

In *Pilgrim Turkey Packers,* the Supreme Court, reversing the Tax Court, held that a taxpayer's reliance on a form which contained ambiguous instructions as to where it was to be filed was sufficient to estop both the Department of Revenue and the assessor from denying the taxpayer's claim for exemption under the processor's statute, and added that the fact that an employee of the department had misled

the taxpayer as to the place of filing strengthened the case.

In *Cascade Manor,* a clerk in the assessor's office, at the inception of an exemption statute, had established a practice of supplying nonprofit corporations with forms necessary to claim exemption from property tax. In one year, the clerk neglected to mail the forms and as a result the taxpayer failed to make a timely filing for exemption. The court stated that the taxpayers had come to rely on the procedure followed by the assessor's office, and that such reliance was reasonable. The assessor was estopped to deny exemption in that case.

■■ In the case at bar, plaintiffs claim to have relied upon the continued assessment of the subject property at farm use value, in spite of the fact that they did not reapply for farm use assessment after their purchase. Although there have been numerous changes in the farm use assessment statute involving requirements of notice to owners of their failure to file and of reapplication by new owners (*see Heenan v. Dept. of Rev.,* 6 OTR 283 (1975), for a complete discussion), the court concludes that even if plaintiffs had been aware of and complied with the filing requirement for farm use assessment, they would not have been in a different position in February 1975 when the assessor denied exemption due to the planting of Christmas trees on the subject property. The continuation of farm use assessment on the subject property might have been sufficient to estop the assessor from denying farm use treatment for the sole reason that plaintiffs had not filed for special assessment. However, reliance on the assessor's conduct cannot support plaintiffs' argument that the assessor should be estopped from assessing the penalty tax provided by statute when the disqualification of the subject property for special assessment was caused by a change in use of the property (the planting of Christmas trees) as opposed to the discovery that reapplication had not been made.

■ Plaintiffs' second argument in support of its claim of estoppel is that the assessor's office misinformed plaintiffs concerning the effect of application for forest land designation for the subject property. The testimony indicated that conversations with representatives of the assessor's office led plaintiffs to believe that forest land designation would give the subject property the same tax treatment as farm use designation. As far as it goes, this information is correct. However, no mention was ever made of the recapture tax provisions of ORS 308.395. Plaintiffs assert that the assessor, having superior knowledge of the effect of the tax law, should have informed plaintiffs of the effect of the denial of farm use assessment. They also argue that if they had been advised to reapply for farm use assessment during the year of purchase, they would not now be required to pay recapture tax. However, it appears to the court that the computation of penalty tax to be recaptured would have been the same, regardless of proper reapplication for farm use assessment, once the assessor removed the subject property from farm use designation in early 1975. The method of determining the additional tax is not affected by the reason for disqualification.

■ There is insufficient evidence to support plaintiffs' plea of estoppel. The doctrine of estoppel should only be applied, according to the Supreme Court:

> "* * * when there is proof positive that the collector has misinformed the individual taxpayer and the taxpayer has a particularly valid reason for relying on the misinformation and that it would be inequitable to a high degree to compel the taxpayer to conform to the true requirement. * * *" *Johnson v. Tax Commission,* 248 Or at 463-464, 435 P2d at 304.)

In this case, the assessor or his employee made no representations and had no duty to inform plaintiffs regarding the recapture tax. Apparently, during conversations between plaintiffs and someone of the assessor's office staff, there was some mention of

[ 70 ]

pending legislation which would permit equivalent tax benefits for farm use land which was changed to forest land designation. The evidence adduced at trial, however, was very hazy and plaintiffs have not established conduct by the assessor sufficiently misleading to warrant the remedy of estoppel.

The third issue raised by plaintiffs, challenging the correctness of the assessor's denial of farm use assessment for the subject property because of the planting of Christmas trees, cannot be reached by this court because of the disposition of the first issue presented in this decision. Plaintiffs' failure to pursue their administrative remedies, by a timely appeal to defendant, precludes the court from consideration of whether Christmas trees are or are not a horticultural crop. However, in passing, it is noted that *Monner v. Dept. of Rev.,* 3 OTR 523 (1969), is the law of the court (holding that Christmas trees are not within the provisions of ORS 215.203(2)(c)).

The final argument made by the plaintiffs urges retroactive application of ORS 321.960, which provides for a change from farm use to forest land designation of particular property without the assessment of full penalties imposed by ORS 308.395. This statute became effective September 13, 1975, after the subject property was disqualified from farm use and the forest land designation was granted, but prior to the time plaintiffs received their tax bill assessing the additional recapture taxes.

■■■ ORS 321.960 provides in pertinent part:

"(1)(a) Land which is assessed under ORS 308.370, 321.617 or 321.720 shall not be subject to the additional taxes or penalties imposed by ORS 308.395, 308.399, 321.621, 321.750 or 321.760 when such land is changed to assessment under ORS 308.370, 321.617 or 321.720. Such land shall be subject to an additional tax as provided under paragraph (b) of this subsection and to no other additional tax or penalty.

"(b) Whenever land is changed to assessment under ORS 308.370, 321.617 or 321.720 as provided in para-

graph (a) of this subsection, the assessor shall notify the owner thereof and there shall be added to the tax extended against the land on the next general property tax roll, to be collected and distributed in the same manner as the remainder of the real property tax, an additional tax equal to 10 times (or such lesser number of times, corresponding to the years of the most recent special assessment to such property under ORS 308.370, 321.617 or 321.720, whichever is applicable) the total amount by which the taxes assessed against the land would have been increased if it had been assessed under the special assessment to which the land has been changed during the last year the assessment was in effect for the land."

Plaintiffs argue that this statute is remedial in nature, dealing with procedure rather than substantive law, and cite *Spicer v. Benefit Ass'n of Ry. Emp.,* 142 Or 574, 17 P2d 1107, 21 P2d 187 (1933), in support of their argument that such statutes may be applied retroactively. The *Spicer* case involved the question of retroactive application of a statute providing for attorney fees in suits or actions brought under insurance policies. The Supreme Court stated, at 142 Or 592-593:

"* * * It is true that the rules of statutory construction strongly favor a prospective interpretation of statutes which affect substantive rights, but when the new statute concerns itself merely with the laws of procedure or remedies, the statute is generally applied to existing rights as well as to those which may accrue in the future: * * *."

The court cited the case of *Denny v. Bean,* 51 Or 180, 93 P 693, 94 P 503 (1908), in support of this statement. However, the court went on to state that the paramount purpose of statutory construction is to give effect to legislative purpose, and ultimately found that the act providing attorney fees was intended to operate prospectively only.

██ In the case of *Denny v. Bean, supra,* at 184, the court stated:

"* * * statutes which merely change the remedy or course and form of procedure, but which do not destroy

all remedy for the enforcement of rights, are retrospective, and apply to causes of action existing and litigation pending at the date of their passage. * * *"

The court pointed out that such a rule was only a guide where the legislative intent was obscure. The *Denny* case involved construction of the following statute:

" 'Whenever a judgment is given in a justice's court in favor of any one * * * the party in whose favor such judgment is given may, within one year thereafter, file a certified transcript thereof with the county clerk of the county wherein such judgment was given, * * *': Hill's Ann. Laws 1892, § 2103." (51 Or at 183.)

Despite the fact that the statute was procedural in nature, upon consideration of the applicable rules of statutory construction, the court held that the words "whenever a judgment is given" indicated a clear legislative intent that they be interpreted to mean "when any judgment is *hereafter* obtained," [emphasis supplied] and should not be given retroactive application.

The words "[w]henever land is changed to assessment * * * as provided in paragraph (a) * * *" appear in subsection (1)(b) of ORS 321.960. The same language structure is used here as was interpreted in *Denny v. Bean, supra.* This court is of the opinion that ORS 321.960 cannot be applied retroactively in this instance, and that the new act applies only to those changes in assessment occurring on or after the effective date, September 13, 1975. Although the penalty tax was not computed and added to the tax rolls until after September 13, 1975, the change in assessment here involved was completely accomplished prior to that date.

Defendant's Order No. VL 76-292 is affirmed in all respects. Defendant is awarded its statutory costs and disbursements.