IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

MELANY BAILEY,                          )
                                        )
            Plaintiff,                   )   TC-MD 200321N
                                        )
      v.                                 )
                                        )
JOSEPHINE COUNTY ASSESSOR,               )
                                        )
            Defendant.                   )   **ORDER**

This matter came before the court on the parties' agreement to submit the case to the

court for decision on written arguments and evidence.  The issues presented are whether

Defendant correctly disqualified property identified as Accounts R331179 and R3311792 or Tax

Lot 1610 (subject property) from forestland special assessment and whether Defendant correctly

imposed back taxes.  The parties filed written arguments and evidence in accordance with their

agreed-upon schedule.  This matter is now ready for the court's determination.

## I.  STATEMENT OF FACTS

The facts here are not in dispute.  The subject property is 9.20 acres.  (Compl at 7.)  In

1988, a prior owner of the subject property applied for and received permission from the County

Planning Director to place "a residence not in conjunction with farm use" on the subject

property, which was zoned "Exclusive Farm."  (Def's Ltr, Dec 17, 2020; Compl at 3-6.)  As a

condition of approval, the subject property was required to be "declassified from special forest

and farm assessment classifications."  (*Id.*)  In accordance with the approval, the owner

requested that the county remove special assessment and the county removed 8.00 acres of the

subject property from forestland special assessment.[1]  (*Id.*)  The county's removal notice gave

_____

[1] It is unclear whether the remaining 1.20 acres was ever in special assessment.

the reason "Non-farm dwelling application per ORS 215.236." (Compl at 5.) The non-farm dwelling was then permitted and placed on the subject property. (Def's Ltr, Dec 17, 2020.)

In 1997, Defendant miscoded the subject property "as Tract-Residential. It should have been coded as Exclusive Farm Permanently Disqualified." (Def's Ltr, Dec 17, 2020.) Evidently this occurred as part of a "software conversion." (*Id.*) In 2004, Plaintiff purchased the subject property and applied for forestland special assessment. (*Id.*; *see also* Compl at 2.) Defendant granted the approval, though it maintains in did so in error due to the software miscoding. (*Id.*) Defendant discovered its error as part of "a routine review of the property records." (Def's Ltr, Dec 17, 2020.) By letter dated June 16, 2020, Defendant removed the subject property from forestland special assessment under ORS 321.257 to 321.390, giving the following reason:

> "During a recent review of [the subject property] it was discovered that a non-farm dwelling had been previously approved under ORS 215.236. Upon the approval of a non-farm dwelling, the parcel is permanently disqualified from the farm and forest special assessment programs. When you applied for and received approval for designated forestland the approval was granted in error. Upon discovery, the Assessor's Office must remove the parcel from the special assessment."

(Compl at 10.) Defendant further imposed additional tax in an "amount equal to the deferred tax accrued in the last five years as required by ORS 308A.712." (*Id.*)

Plaintiff maintains Defendant's disqualification was in error because she has been a good steward of the forestland, which she described as "mature second growth forest," and complied with the special assessment program requirements. (Compl at 2.) Plaintiff wrote that she has

> "kept up [her] agreement to maintain the property as forest land and [has] complied with the rules and regulations set up by the County since 2004. Had [she] not received the Forest land designation, [she] would have made other plans for the property to offset taxes and to make additional income. [She] relied on the County's decision for the Forest designation to [her] detriment."

(Ptf's Ltr, Dec 8, 2020.) To give an example, Plaintiff noted she might have removed some of

"the native trees and placed a small orchard or developed a portion of the property for some type of cash crop." (*Id.*) Plaintiff asserts it is a "considerable hardship" for Defendant to change the subject property's designation after 16 years because Plaintiff is now in her "senior years" and has retired, so it is not "physically or financially" possible for her to change her use of the subject property. (*Id.*) If the court were to uphold the disqualification, Plaintiff argues that she should not be responsible for the five years of back taxes because any mistake in granting the application was not her fault. (*Id.*; *see also* Compl at 2.)

## II. ANALYSIS

The issues presented are: 1) whether Defendant correctly disqualified the subject property from forestland special assessment; 2) whether Defendant correctly imposed five years of additional taxes; and 3) whether Defendant is estopped from disqualifying the subject property or imposing additional taxes because it granted the special assessment in error.

A.      *Forestland Special Assessment, Disqualification, and Additional Tax*

The legislature has determined that, as a matter of public policy, the state should encourage the maintenance of forestland by granting it special assessment. ORS 321.262.

> " 'Forestland' means land in western Oregon that is being held or used for the predominant purpose of growing and harvesting trees of a marketable species and has been designated as forestland or land in western Oregon, the highest and best use of which is the growing and harvesting of such trees."

ORS 321.257(2).[2] Once land has been designated as forestland, "it shall be valued as such until the assessor removes the forestland designation" under one of the circumstances specified by statute. ORS 321.359(1)(a). One such circumstance is "[d]iscovery by the assessor that the land

/ / /

---

[2] The court's references to the Oregon Revised Statutes are to 2019.

is no longer forestland[,]" in which case the assessor "shall remove the forestland designation[.]" ORS 321.359(1)(b)(C).

When designated forestland is disqualified due to discovery by the assessor that it is no longer forestland, "the disqualification shall be deemed to occur as of the January 1 assessment date of the assessment year in which the discovery occurs." ORS 321.366(1). Following disqualification, "an additional tax shall be added to the tax extended against the land on the next assessment and tax roll[.]" ORS 308A.703(1)(c), (2). In the case of Western Oregon forestland, the additional taxes shall be the lesser of five years or "the number of consecutive years the land had qualified for the special assessment program[.]" ORS 308A.703(3)(d)(B).

To receive a permit for a non-farm dwelling in an exclusive farm use zone, the property must be disqualified from special assessment, including designated forestland special assessment, and any additional tax due upon disqualification must be paid. *See* ORS 215.236(1), (3), (4) (cross-referencing ORS 321.257 to 321.390, which provides for special assessment of Western Oregon forestland). Once such property is disqualified from special assessment, it may not requalify except in circumstances not applicable here.[3] ORS 215.236(5).

A review of prior cases reveals several with similar facts as presented here. In *Mark v. Dept. of Rev.*, 12 OTR 369 (1993), taxpayer challenged additional taxes imposed following disqualification of his property from farm use special assessment. In 1989, a prior owner was granted a conditional use permit that required the owner to disqualify the property from special assessment. *Id.* Even though he failed to request disqualification or otherwise notify the assessor, the county planning commission issued the permit. *Id.* Taxpayer bought the property

---

[3] ORS 215.236(5) and (6) provide for the possibility that property may requalify for special assessment when combined with another contiguous lot or parcel that together qualify, or when the property qualifies for wildlife habitat or conservation easement special assessment.

in 1990 and, shortly thereafter, the assessor discovered that the property no longer qualified for special assessment and disqualified it. *Id.* The court upheld the imposition of additional taxes, noting that taxes are imposed against the property—not the owner—and that the assessment and tax roll warned of the potential additional tax liability. *Id.* at 370-372.

In *Teich v. Clackamas County Assessor*, TC-MD 990478C, 1999 WL 1568590 (Or Tax M Div, Nov 4, 1999), taxpayer appealed the disqualification of property from forestland special assessment for the 1999-00 tax year. In 1990, taxpayer had obtained a nonfarm variance to place a home on the property and, as a condition, was required to request disqualification from special assessment. *Id.* at *1. In 1993, taxpayer applied for forestland special assessment and the assessor granted the application. *Id.* In 1999, the assessor discovered that it had granted the special assessment in error and removed the deferral status for that year. *Id.* The assessor declined to impose the five-year "penalty" based on its error. *Id.* The court reviewed the applicable statutes and upheld the disqualification. *Id.* at *2-*3.

In *Miller v. Jackson County Assessor*, TC-MD 111063C, 2012 WL 5766577 (Or Tax M Div, Nov 16, 2012), taxpayer appealed from a correction under ORS 311.205 that removed property from special assessment and imposed additional taxes for four years. A prior owner of the property had received permission to build a nonfarm dwelling in 1989 and so was excluded from special assessment under ORS 215.236. *Id.* at *1. Nevertheless, two years later the assessor approved an application to requalify for special assessment. *Id.* The assessor discovered its error in 2011 and initially sent taxpayer a disqualification notice imposing 10 years of additional taxes. *Id.* It then changed from a disqualification to a "correction of any other kind" under ORS 311.205, with four years of additional taxes. *Id.* The court upheld the assessor's action as a clerical error correction under ORS 311.205. *Id.* at *3.

Defendant's disqualification of the subject property from forestland special assessment is supported by statute. Once the county issued a permit to build a nonfarm dwelling under ORS 215.236, the subject property no longer qualified for forestland special assessment and was ineligible to requalify unless combined with another parcel that together qualified. Defendant erred when it granted Plaintiff's application for forestland special assessment in 2004 and correctly disqualified the subject property when it "discovered" that the subject property did not qualify in 2020. When Defendant disqualified the subject property, it was required to impose five years of additional taxes because the subject property had been in special assessment for more than five years. Each of the actions taken by Defendant were mandatory, as indicated by use of the word "shall" in the statutes. *See Preble v. Dept. of Rev.*, 331 Or 320, 324, 14 P3d 613 (2000) (noting that the dictionary defines " '[s]hall' [as] a command: it is 'used in laws, regulations, or directives to express what is mandatory'").

In *Teich*, the assessor chose not to impose additional taxes, even though "[t]he statute governing disqualification provide[d] for a roll back penalty for up to five years, based on the amount of the tax savings each year." 1999 WL 1568590 at *3. The court observed that the county had "decided to overlook that provision because of their error." *Id.* Having determined that Defendant here correctly imposed the additional taxes in accordance with ORS 308A.703, the court finds no basis for a different conclusion based on the facts presented in *Teich*.

B.    *Estoppel Based on Defendant's Error in Granting Special Assessment*

Estoppel requires taxpayer to prove three elements: "(1) misleading conduct on the part of the defendant(s); (2) taxpayer's good faith reliance on that conduct; and (3) injury to taxpayer." *Hoyt Street Properties LLC v. Dept. of Rev.,* 18 OTR 313, 318 (2005) (citations omitted). In prior cases, courts have found the elements of estoppel were met when "a taxpayer

had justifiably relied on actions of the assessor which resulted in the loss of an exemption to which the taxpayer would have otherwise been entitled if an application had been timely filed." *Clendenin v. Dept. of Rev.*, 7 OTR 62, 68 (1977) (citing *Johnson v. Tax Commission*, 248 Or 460, 435 P2d 302 (1967) ; *Pilgrim Turkey Packers v. Dept. of Rev.*, 261 Or 305, 493 P2d 1372 (1972); *Cascade Manor, Inc. et al v. Dept. of Rev.*, 5 OTR 482 (1974) ). Several prior cases involving similar estoppel claims are helpful here.

In *Clendenin*, 7 OTR at 63-64, taxpayers purchased a large farm property that qualified for special assessment prior to their purchase and they continued farm use on about half of the property after purchase. Even though taxpayers failed to reapply for farm use special assessment upon purchasing the property, the assessor "inadvertently continued to treat it as eligible for special assessment for a period of about five years." *Id.* at 64. During the winter of 1974-75, taxpayers planted Christmas trees and, upon receiving a letter from the assessor notifying them that no farm use application had been received, they applied for forestland designation, which was granted. *Id.* at 64-65. In 1975, the assessor disqualified the property from farm use special assessment and imposed "recapture taxes." *Id*. at 65. Taxpayers sought to avoid the imposition of additional taxes based on the assessor's continued assessment of taxpayers' property at farm use value "in spite of the fact that they did not reapply for farm use assessment after their purchase." *Id.* at 68-69. The court rejected that argument, finding taxpayers had not relied on the assessor's conduct; "the penalty tax [was] provided by statute when the disqualification * * * was caused by a change in use of the property (the planting of Christmas trees) as opposed to the discovery that reapplication had not been made." *Id.* at 69. Taxpayers "would not have been in a different position in February 1975" "had [they] been aware of and complied with the filing requirement for farm use assessment." *Id.*

In *Mark*, taxpayer argued that the assessor was estopped from imposing additional taxes based on the failure of the county planning commission to perform its duties. 12 OTR at 371. The court denied the claim, finding no misleading conduct by the assessor. *Id.*[4] In *Teich*, taxpayers argued for estoppel on the theory that they were injured because they planted trees in reliance on the assessor's erroneous grant of special assessment. 1999 WL 1568590 at *2. The court disagreed, finding that taxpayers "were considerably enriched" by the assessor's error "because they received a reduced tax bill for seven years before the error was caught." *Id.* Further, taxpayers were "not paying for the [assessor's] mistake" because the assessor declined to impose five years of additional taxes. *Id.*

Plaintiff argues, in essence, that Defendant should be estopped from disqualifying the subject property or imposing the back taxes because Defendant erred when it granted Plaintiff's application in 2004 and Plaintiff relied on that error to her detriment by planting trees, complying with program requirements, and foregoing other opportunities with the subject property.

Assuming without deciding that the first two requirements of estoppel are satisfied—misleading conduct by Defendant and reliance by Plaintiff—the court finds that Plaintiff did not suffer the type of injury contemplated by estoppel in the context of property tax. As discussed above, the subject property is not entitled to special assessment and, in fact, is ineligible for it. That distinguishes this case from others where the court applied the estoppel doctrine, such as *Johnson*, *Pilgrim Turkey*, and *Cascade Manor*. Plaintiff was not deprived of a tax benefit that she was otherwise due because of Defendant's misleading conduct. Rather, Plaintiff received a

_____

[4] The court observed that "[t]he only basis for claiming estoppel would be: issuance of the conditional-use permit before the land was actually disqualified led plaintiff to believe the land was already disqualified." 12 OTR at 371-72. However, the court found that no representation was made to the taxpayer and he failed to show that "he was entitled to rely on any inference to be drawn from the conditional-use permit." *Id.*

tax benefit—special assessment—for many years when the subject property did not in fact qualify. The additional taxes were imposed for five years, whereas the subject property was specially assessed for 16 years. To put it another way, Plaintiff is not in a worse position with respect to property tax because of Defendant's erroneous grant of special assessment. Although Plaintiff may have lost other opportunities with the subject property while it was in special assessment, that is not the type of injury remedied by this court.[5] The court recognizes that paying five years' additional taxes may be difficult for Plaintiff, however, the subject property cannot remain in special assessment indefinitely where it does not qualify.

## III. CONCLUSION

Upon careful consideration, the court concludes that Defendant correctly disqualified the subject property from forestland special assessment and correctly imposed five years' additional tax. The court further concludes that Defendant is not estopped from disqualifying the subject property and imposing additional tax based on its erroneous grant of special assessment in 2004. Now, therefore,

///

///

///

///

///

---

[5] This court hears cases where taxpayers are "aggrieved by and affected by" acts, orders, omissions, and determinations of the county assessor, among others. ORS 305.275(1)(a)(C). To be "aggrieved," a taxpayer usually must show that the relief requested will result in some reduction in their tax liability. *See Kaady v. Dept. of Rev.*, 15 OTR 124, 125 (2000). The Oregon Supreme Court expanded the concept of aggrievement somewhat in *Seneca Sustainable Energy, LLC v. Dept. of Rev.*, 363 Or 782, 429 P3d 360 (2018), finding taxpayer was aggrieved based on defendant's determination of real market value that was used by the enterprise zone sponsor to calculate taxpayer's public benefit contribution, a pecuniary interest though not a tax.

IT IS ORDERED that Plaintiff's appeal is denied.

Dated this _____ day of May 2021.

_____
ALLISON R. BOOMER
PRESIDING MAGISTRATE

***This is a <u>dispositive order</u> pursuant to Tax Court Rule – Magistrate Division 16 C(1). The court will issue a decision after waiting 14 days to determine whether there is a dispute about costs and disbursements.  Any claim of error in regard to this order should be raised in an appeal of the Magistrate's decision when all issues have been resolved.  See TCR-MD 19.***

***This document was signed by Presiding Magistrate Allison R. Boomer and entered on May 11, 2021.***